Hillsborough
No. 90-141

NICHOLAS R. ZYLA

v.

ROBERT K. TURNER, DIRECTOR OF DEPARTMENT OF SAFETY, DIVISION OF MOTOR VEHICLES

May 6, 1991

*Joyal & Campbell P.A.*, of Manchester (*Richard J. Joyal* on the brief and orally), for the plaintiff.

*John P. Arnold*, attorney general (*David S. Peck*, senior assistant attorney general, and *Charles T. Putnam*, assistant attorney general, on the brief, and *Mr. Putnam* orally), for the defendant.

HORTON, J.  The director of the division of motor vehicles appeals an order of the Superior Court (*McHugh*, J.) setting aside a determination of the division revoking the plaintiff's, Nicholas R. Zyla, drivers license pursuant to RSA 265:92 (refusal to submit to alcohol concentration test). The plaintiff appealed the division's determination to the superior court under RSA 263:75, and the *de novo* hearing on that appeal resulted in the order appealed to this court. We reverse and remand.

The plaintiff was a passenger in an automobile stopped by the Manchester police on the morning of August 12, 1989. The evidence shows that at least three Manchester police officers and one State Trooper responded to the stop, which resulted in the arrest of the driver, John Noyes, for driving while under the influence of alcohol. More pertinent to the present case was the conduct of Zyla at the scene. All witnesses, including Noyes and Manchester police officer John Boles, who was serving as a back-up on the arrest, testified that Zyla was obviously intoxicated, his speech mumbled and slurred, and his eyes glassy and bloodshot. Officer Boles instructed Zyla not to drive the car and offered to call him a cab to get home. The court found that Zyla then left the area by foot, and that the officers left the car, belonging to Zyla's sister, abandoned at the side of the road with the keys still in the ignition. Officer Boles resumed his patrol duties. Within a half hour he returned to the area and observed the vehicle being driven from the scene. Based on his suspicion that Zyla

was the driver, he followed. Observing erratic operation, he stopped the vehicle. Officer Boles confirmed that Zyla was indeed the driver, and had him perform field sobriety tests, all of which he failed. Zyla was arrested, informed of his *Miranda* rights and taken to the police station. For reasons immaterial to this appeal, the police did not request Zyla to consent to a chemical blood analysis, commonly known as a "breathalyzer test," until approximately ninety minutes after his arrest. The police informed him of his right to refuse such consent pursuant to sections 87 and 92 of RSA chapter 265, whereupon the plaintiff invoked this right, signing the consent form to indicate his understanding of his right.

The Manchester police charged Zyla with driving while intoxicated and notified the department of motor vehicles of his refusal to take the alcohol concentration test. Based on this information, and the fact of Zyla's previous conviction for driving while intoxicated, the department revoked his license for one year. *See* RSA 265:92, I(b) (Supp. 1990, effective until Jan. 1, 1991). Zyla requested an administrative hearing of this decision, RSA 263:74 (Supp. 1990), after which the revocation of his license was sustained.

Zyla filed an appeal in superior court, as provided by RSA 263:75 (Supp. 1990), for a *de novo* hearing on the revocation. At that hearing, he presented the claims of entrapment and that the police failed to discharge their duty under RSA chapter 172-B to take him into protective custody. The court rejected the entrapment claim, but refused to revoke Zyla's license on the basis that "looking at the whole picture, it is clear that justice requires that the determination of the Division of Motor Vehicles revoking the plaintiff's license for a violation of the implied consent law be set aside. . . ." The division now appeals, alleging no breach of duty by the police, and that the remedy of denying Zyla's license revocation is inappropriate.

■ The legislature has given the superior court the duty to determine, on a *de novo* basis, whether to revoke a license. RSA 263:75. Although the appropriate factors to be considered by the court are not enumerated in section 75 of RSA chapter 263, it is presumed that the court should consider the same five factors that the division should consider in its initial hearing under RSA 263:74. *Guillou v. State Div. of Motor Vehicles*, 127 N.H. 579, 585, 503 A.2d 838, 842 (1986) (under former version of statute governing appeal procedure, inference was that legislature intended the "court to determine eligibility under the same standards that the administrative agency was bound to apply"). Therefore, the *de novo* hearing in superior court

"shall cover the issues of whether a law enforcement officer had reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle upon the ways of this state while under the influence of intoxicating liquor, narcotics or drugs; whether the person was placed under arrest; whether he refused to submit to the test upon the request of the officer; whether the person was informed that his privilege to drive would be revoked or denied if he refused to submit to the test; and whether the person was informed of his right to have a chemical test or tests made by a person of his own choosing."

*See* RSA 263:74. The division asserts that the court should consider only these five factors in its determination, while the plaintiff asserts that various defenses available in criminal proceedings are available in this proceeding, and were properly considered. We agree that the language "shall cover" does not limit the court to considering *only* those five factors and permits it to consider relevant factors, but hold that the court abused its discretion in basing its decision on facts irrelevant to the question of whether Zyla voluntarily declined to submit to the chemical test.

The plaintiff wishes us to affirm the opinion below based on the finding of a breach of duty to take him into protective custody or, alternatively, because he was entrapped. We need not address these questions as there is no allegation that they are material to the issue of consent under RSA 265:92. However broadly the plaintiff wishes to frame the question, our inquiry must remain focused on the nature of the issues material to revocation. The license revocation at issue is a civil, not criminal, penalty. *State v. Cormier*, 127 N.H. 253, 258, 499 A.2d 986, 989 (1985). By statute, the legislature has chosen to mandate a civil penalty for the act of refusing to consent to a chemical test.

■■ As we noted in Cormier, there is no constitutional right to refuse to submit to a chemical test. *Id.* at 257, 499 A.2d at 989. RSA 263:92 provides a trade-off, and it is left to the driver to choose whether to provide a sample for analysis, or invoke the statutory right to refuse and face imposition of a civil penalty in addition to a possible criminal penalty. The consequences of this choice flow not from whether the driver may or may not be criminally liable, but from the exercise of the *choice*. Regardless of what factors led to Zyla's driving of the vehicle, they are of little relevance to the inquiry into whether or not he freely and voluntarily made the choice

of refusal. Any defenses which may or may not be successful in a defense against *criminal* punishment for the *act of driving, see, e.g., State v. Westlund,* 729 P.2d 541, 544 (Or. 1986); *State v. Merritt,* 546 A.2d 791, 793 (Vt. 1988), are not at issue on the question of civil consequences for exercising the *choice* of declining a test. Once having freely made this choice, the legislature may impose a civil penalty for the act of refusal. *Cormier, supra* at 258, 499 A.2d at 989. Therefore, any factors other than those affecting the voluntariness of Zyla's choice are not relevant in the revocation proceeding. There is no suggestion in the record that the evidence considered by the court had any bearing on Zyla's exercise of this choice. We therefore hold that the superior court's consideration of factors that might have excused Zyla's operation of the vehicle was beyond the proper scope of the inquiry, and thus in error. Accordingly, we reverse and remand for a further hearing considering only those factors relevant to Zyla's choice of refusal.

*Reversed and remanded.*

THAYER, J., did not sit; the others concurred.