Grafton
No. 99-042

MICHAEL J. LOPEZ

v.

DIRECTOR, NEW HAMPSHIRE DIVISION OF MOTOR VEHICLES

August 28, 2000

*Michael J. Lopez, pro se*, filed no brief.

*Philip T. McLaughlin*, attorney general (*Douglas N. Jones*, assistant attorney general, on the brief and orally), for the defendant.

MCHUGH, J., superior court justice, specially assigned under RSA 490:3. The defendant, the director of the division of motor vehicles (division), appeals an order of the Superior Court (*Smith*, J.) vacating an order of the division that revoked plaintiff Michael Lopez's right to operate a motor vehicle in New Hampshire. *See* RSA 265:91-a (1993 & Supp. 1999). We reverse and remand.

The relevant facts are as follows. At approximately 1:30 a.m. on February 28, 1998, Trooper Robert Terhune was on routine patrol traveling south on Route 3 in Woodstock. As he approached the intersection of Route 112, Terhune observed the plaintiff driving a van north on Route 3. The van was proceeding very slowly through the intersection and Terhune decided to follow it. The van traveled about a quarter mile north and turned into the driveway of a building complex. Electing not to continue following the van, Terhune reversed direction and again proceeded south on Route 3. He then saw the van pull out onto Route 3 abruptly. Concluding that the driver was either confused, lost, or trying to avoid him, Terhune again followed the van.

With Terhune following, the van turned sharply onto Connector Road. A Lincoln police cruiser pulled out behind the van with its blue lights activated. The van then turned onto a small side street in front of a mobile home and stopped. The Lincoln police cruiser pulled in directly behind the van. Two men ran from the van toward the mobile home. Terhune thereafter parked directly behind the other cruiser. Lincoln Police Officer Scott McKinley followed the two men to the mobile home and asked who had been driving.

Terhune approached the men and informed McKinley that he had seen the plaintiff driving the van moments before McKinley had begun pursuing it. Terhune observed that the plaintiff smelled of alcohol, had bloodshot eyes, and slurred his speech. Terhune subsequently conducted field sobriety tests. Based on the results of those tests and other observations, Terhune arrested the plaintiff for driving while intoxicated. *See* RSA 265:82 (Supp. 1999). The plaintiff refused to submit to a blood alcohol test and his right to operate a motor vehicle in New Hampshire was suspended. *See* RSA 265:91-a. He timely requested an administrative license suspension (ALS) hearing with the division. *See* RSA 265:91-b (1993 & Supp. 1999).

Only Terhune testified at the hearing. He stated that he saw the plaintiff operating the van, and that the plaintiff performed field sobriety tests. Based upon his observations, Terhune determined that the plaintiff was impaired. Although Terhune testified that he did not know why the Lincoln police officer stopped the plaintiff, no evidence was submitted to support a finding that the stop was in fact illegal. The hearings officer upheld the suspension.

■ In an appeal to the superior court from an ALS hearing, the plaintiff has the burden to show that the order upholding the suspension was clearly unreasonable or unlawful, and all findings of fact on questions properly before the hearings examiner are deemed to be *prima facie* lawful and reasonable. *See* RSA 263:75, II (Supp. 1999). There was no real dispute about the plaintiff's operation of the vehicle or his impaired status.

The superior court ruled that as an underlying basis for any lawful administrative license suspension there must be a constitutionally valid traffic stop and a valid arrest of the operator. Secondly, the trial court ruled that the "exclusionary rule" should extend to ALS proceedings. On appeal, the defendant challenges both rulings.

The defendant first argues that RSA 265:91-b does not provide that a constitutionally valid stop and arrest are necessary to suspend an operator's license or driving privileges. The statute

requires only that prior to a person's license or right to operate being suspended, the division must find that the person was arrested and that the police officer had reasonable grounds to believe that the arrested person had been operating a vehicle upon the ways of this State while under the influence of intoxicating liquor. The trial court added an additional requirement, namely, that the constitutional validity of the stop must be established under prevailing criminal law. In criminal cases the police may stop and detain persons for an investigative purpose only when based upon a reasonable suspicion that the detainee had committed, was committing, or was about to commit a crime. *State v. McBreairty*, 142 N.H. 12, 14, 697 A.2d 495, 496 (1997).

The validity of the arrest or the traffic stop leading to the arrest is not required by RSA 265:91-b to be established in order to sustain an administrative license suspension. The trial court, however, determined that to consider whether or not reasonable grounds existed for finding that the plaintiff was operating a motor vehicle under the influence of intoxicating liquor, a "relevant factor" would be the constitutional validity of the stop and arrest of the operator. We disagree. A valid arrest and traffic stop, while vital to a criminal proceeding, is not a required predicate under the ALS statute.

RSA 265:91-a provides for no criminal penalties. The legislature elected to establish administrative license suspensions as a civil proceeding. RSA 265:91-a was enacted as part of Laws 1992, chapter 258. As such it is a public safety measure in which swift and informal civil administrative license suspension proceedings are separated from the criminal proceedings set forth in RSA 265:82, which deals exclusively with those persons charged with driving under the influence of intoxicating liquor.

In *Zyla v. Turner*, 134 N.H. 259, 590 A.2d 618 (1991), we distinguished administrative license suspension matters under prior law from criminal matters. *See Zyla*, 134 N.H. at 262, 590 A.2d at 620. In that case, the plaintiff alleged that the State breached a duty to take him into protective custody and instead entrapped him. We held that any potential criminal defenses were not available to the plaintiff under former RSA 265:92 (Supp. 1990), the refusal of consent to submit to chemical test statute, because license revocation is a civil penalty. *See id.* at 262-63, 590 A.2d at 620. Similarly, the Supreme Court of Pennsylvania using the same rationale held in *Pennsylvania, Department of Transportation v. Wysocki*, 535 A.2d 77 (1987), that the constitutionality of a police roadblock had no bearing on the validity of the suspension of a driver's license under the State's implied consent law.

■ Because RSA 265:91-a is not a criminal statute, criminal law does not apply to these proceedings. Thus, the lawfulness of the stop is not necessary to sustain a valid license suspension under said statute. Nor is a criminally valid arrest required in order for the State to proceed under this statute.

The second issue raised by the defendant is whether the exclusionary rule applies to proceedings under RSA 265:91-a. The trial court concluded that application of the exclusionary rule was necessary to remedy the police misconduct it found in this case. The exclusionary rule is the legal principle that prohibits the admission in criminal proceedings of evidence obtained unconstitutionally by police officers.

The superior court relied upon *State v. Canelo*, 139 N.H. 376, 653 A.2d 1097 (1995), for its conclusion. *Canelo* involved the validity of a search warrant in a felony drug prosecution. We held that the anticipatory search warrant in that case was invalid, and that the exclusionary rule prohibited evidence obtained as a result of that search warrant from being used in the defendant's criminal trial. *Canelo*, 139 N.H. at 382-88, 653 A.2d at 1102-05. The trial court in this case concluded that because no subsequent case limited *Canelo* to criminal matters, the plaintiff could claim the protection of the exclusionary rule in any case of alleged police misconduct. We disagree.

■ The United States Supreme Court, when called upon to interpret federal law, has specifically limited the exclusionary rule to criminal trials. Persons involved in other proceedings such as probation and parole violation hearings, grand jury matters, and civil tax cases, for example, cannot invoke the exclusionary rule under the Fourth Amendment. *See Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 363-64 (1998). We see no reason to apply the rule to ALS hearings. Other state courts have held that the results of a blood alcohol test found inadmissible in a criminal proceeding may nevertheless be used to revoke a person's driver's license. *See Wiebenga v. Dept. of Transp.*, 530 N.W.2d 732 (Iowa 1995). In *Powell v. Secretary of State*, 614 A.2d 1303, 1306-07 (Me. 1992), the Maine Supreme Judicial Court held that evidence obtained as a result of a constitutionally invalid stop would not be excluded at a civil administrative license suspension hearing under the exclusionary rule.

Accordingly, we reverse and remand to the superior court for further proceedings consistent with this opinion.

*Reversed and remanded.*

NADEAU and DALIANIS, JJ., concurred; GRAY, J., retired superior court justice, and GROFF, J., superior court justice, specially assigned under RSA 490:3, concurred.