Rockingham
No. 2002-317

LORI JACOBS

v.

DIRECTOR, N.H. DIVISION OF MOTOR VEHICLES

Argued: March 12, 2003
Opinion Issued: May 16, 2003

*Jeffco, Starbranch & Soldati,* of Portsmouth (*Harry N. Starbranch* on the brief and orally), for the plaintiff.

*Peter W. Heed,* attorney general (*Mary P. Castelli,* senior assistant attorney general, on the brief and orally), for the defendant.

DUGGAN, J. The defendant, the director of the division of motor vehicles (division), appeals an order of the Superior Court (*McHugh,* J.) vacating the driver's license suspension imposed on the plaintiff, Lori Jacobs. The division argues that the trial court improperly considered the validity of the underlying traffic stop and wrongly decided the propriety of the division's drawing an adverse inference from Jacobs' failure to testify. We reverse and remand.

The trial court found the following facts. On September 22, 2001, Officer John Petrosh of the Exeter Police Department received a dispatch from the State police. The dispatch advised him that an unidentified cell phone caller had complained of reckless driving by a certain vehicle, which the caller identified by its color, location, and vanity license plate. Shortly thereafter, Officer Petrosh spotted this vehicle. He briefly observed the vehicle, but did not note any violations of the law. Officer Petrosh elected to pull it over.

The driver, Lori Jacobs, was cooperative, and exhibited no coordination problems or difficulty in producing her registration. Officer Petrosh, however, observed that her face was flushed, her speech was slurred, and

that an odor of an alcoholic beverage was present. He requested that she perform several field sobriety tests. Jacobs refused because "her friends told her she shouldn't take the tests." Officer Petrosh arrested Jacobs for driving under the influence.

Because Jacobs had refused to take a chemical test after her arrest, and had a prior refusal on her motor vehicle record, the division automatically suspended her driver's license under RSA 265:92, I (b)(1) (Supp. 2002). Jacobs requested an administrative license suspension (ALS) hearing before the division of motor vehicles pursuant to RSA 265:91-b (Supp. 2002). At the hearing, Officer Petrosh testified and submitted a copy of his arrest report. Jacobs did not testify. The hearings examiner concluded that the State met its burden of proving that Officer Petrosh had "reasonable grounds to believe the arrested person had been driving ... while under the influence." RSA 265:91-b, II(a) (Supp. 2002). In the decision, the examiner found that "[Jacobs] did not testify in this hearing. The negative inference that not testifying in a civil proceeding warrants against her is made concerning the material facts at issue here." Thus, the examiner upheld the suspension of Jacobs' license.

Pursuant to RSA 263:75, I (Supp. 2002), Jacobs appealed this decision to the superior court. The court determined that the examiner erred in two respects relevant to this appeal. First, the court found that the examiner had no basis from which to draw a negative inference from the defendant's failure to testify at the ALS hearing. Second, the court ruled that the examiner failed to consider the validity of the underlying traffic stop. Because the court concluded that the officer "did not have reasonable articulable suspicion to warrant a stop of [Jacobs'] vehicle," it vacated the suspension of Jacobs' license.

On appeal, the division does not address the validity of the underlying stop, but instead argues that the issue is not relevant in a license suspension proceeding. The division also argues that the ALS examiner did not commit reversible error in drawing a negative inference from Jacobs' failure to testify. We consider each issue in turn.

> In an appeal to the superior court from an ALS hearing, the plaintiff has the burden to show that the order upholding the suspension was clearly unreasonable or unlawful, and all findings of fact on questions properly before the hearings examiner are deemed to be *prima facie* lawful and reasonable.

*Lopez v. Director, N.H. Div. of Motor Vehicles*, 145 N.H. 222, 223 (2000); *see* RSA 263:75, II (Supp. 2002). "We defer to the trial court's factual findings, provided there is evidence in the record to support them." *Wensley v. Director, N.H. Div. of Motor Vehicles*, 140 N.H. 560, 561 (1995).

However, we review the superior court's application of the law to the facts *de novo. See Sintros v. Hamon*, 148 N.H. 478, 480 (2002).

Jacobs argues that the "reasonable grounds" provision of RSA 265:91-b, II(a) requires that the arresting officer effect a constitutionally valid stop; that is, the officer must have had reasonable suspicion, supported by specific and articulable facts, that the driver had committed, was committing, or was about to commit a crime before he stopped her. *See State v. McBreairty*, 142 N.H. 12, 14 (1997). Alternatively, she argues that the exclusionary rule of Part I, Article 19 of the State Constitution requires that evidence seized as a result of an illegal stop be excluded from a license suspension hearing. *See State v. Canelo*, 139 N.H. 376 (1995).

We decided both of these issues in *Lopez*, 145 N.H. at 223. In *Lopez*, we concluded that "the lawfulness of the stop is not necessary to sustain a valid license suspension under [RSA 265:91-a]. Nor is a criminally valid arrest required in order for the State to proceed under this statute." *Id.* at 225. We also rejected the argument that *Canelo* compelled application of the exclusionary rule to license suspension hearings. Instead, we adopted the reasoning of *Pennsylvania Board of Probation and Parole v. Scott*, 524 U.S. 357, 363-64 (1998), and concluded that the exclusionary rule does not apply to such proceedings. *Id.*

The trial court found that *Lopez* is distinguishable from this case because the officer in *Lopez* had made "independent observations of abnormal operation" whereas here Officer Petrosh relied only upon an anonymous tip. We read *Lopez* differently. In *Lopez*, the officer who stopped the motorist did not testify at the suspension hearing. *Id.* at 223. The only officer who did testify stated that he did not know why the motorist was stopped. *Id.* We thus cannot agree with the trial court's conclusion that *Lopez* requires at least "some basis to conduct an investigatory stop."

Jacobs asks us to overrule *Lopez*, citing cases in other jurisdictions where courts have either interpreted state statutes or invoked the exclusionary rule to require a constitutionally valid stop as a condition of license suspension. *See, e.g., State v. Lussier*, 757 A.2d 1017 (Vt. 2000); *People v. Krueger*, 567 N.E.2d 717, 721-23 (Ill. App. Ct. 1991). We decline to do so.

The doctrine of stare decisis "demands respect in a society governed by the rule of law," for "when governing legal standards are open to revision in every case, deciding cases becomes a mere exercise of judicial will with arbitrary and unpredictable results." *Brannigan v. Usitalo*, 134 N.H. 50, 53 (1991) (quotation omitted). Thus, when asked to reconsider a holding, the question is not whether we would decide the issue differently *de novo*, but whether the ruling has "come to be seen so clearly as error that its

enforcement was for that very reason doomed." *Planned Parenthood of Southeastern PA v. Casey,* 505 U.S. 833, 854 (1992). Several factors inform our judgment, including: (1) "whether the rule has proven to be intolerable simply in defying practical workability," *id.* at 854; (2) "whether the rule is subject to a kind of reliance that would lend a special hardship to the consequences of overruling," *id.*; (3) "whether related principles of law have so far developed as to have left the old rule no more than a remnant of abandoned doctrine," *id.* at 855; and (4) "whether facts have so changed, or come to be seen so differently, as to have robbed the old rule of significant application or justification," *id.*

In this case, any suggestion that the *Lopez* holding has proven to be unworkable or is outside the development of the law is belied by similar holdings in many other jurisdictions. The United States Supreme Court, for example, has held that the federal exclusionary rule does not apply in many contexts where the State is a party against an individual. *See Scott,* 524 U.S. at 359 (parole revocation hearings); *INS v. Lopez-Mendoza,* 468 U.S. 1032, 1034 (1984) (civil deportation hearings); *but see Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 696, 700 (1965) (exclusionary rule applies in a "quasi-criminal" civil forfeiture proceeding). Moreover, many States with license suspension statutes similar to our own have found no statutory or constitutional basis to require a valid investigatory stop. *See, e.g., Tornabene v. Bonine ex rel. Highway Department,* 54 P.3d 355, 360-66 (Ariz. Ct. App. 2002); *Fishbein v. Kozlowski,* 743 A.2d 1110, 1115-19 (Conn. 1999); *Riche v. Director of Revenue,* 987 S.W.2d 331, 332-36 (Mo. 1999).

Likewise, Jacobs has presented no evidence that the factual assumptions underlying *Lopez* were incorrect. *Lopez* derives its authority from *Scott,* which held that the exclusionary rule does not apply outside of a criminal trial unless the costs of such exclusion are outweighed by deterrence of police misconduct. *Scott,* 524 U.S. at 365-67; *Lopez,* 145 N.H. at 225. Thus, *Lopez* rests upon an assumption that the exclusionary rule used in criminal trials is already sufficient to deter police officers from conducting illegal stops, and that applying the exclusionary rule in license suspension hearings would confer no significant additional benefit. As one court concluded:

> It strikes us as extremely unlikely that officers [would conduct illegal stops] merely with the hope of obtaining license suspensions, knowing that evidence of intoxication obtained from such an encounter would be inadmissible in any criminal DUI prosecution and that clearly impermissible police conduct could subject officers to civil liability [under 42 U.S.C. § 1983].

*Tornabene,* 54 P.3d at 365-66; *see also Scott,* 524 U.S. at 368. In the absence of any evidence contrary to this assumption, we see no need to overrule *Lopez.*

■ Finally, we note that because *Lopez* involved the interpretation of a statute, the legislature has the ability to modify the statute and require valid stops in license suspension hearings. *See Petition of Correia,* 128 N.H. 717, 722 (1986). The legislature's failure to do so counsels against overruling *Lopez. Cf. Moody v. Continental Paving, Inc.,* 148 N.H. 592, 594 (2002). For all these reasons, we adhere to *Lopez* and hold that the trial court erred in considering the validity of the underlying stop.

■ We turn to the second issue raised in the division's appeal. The superior court found that the hearings examiner erred in drawing an adverse inference from Jacobs' failure to testify at the hearing. It is not necessary to decide whether the trial court was correct because we find that the hearings examiner's ruling was harmless. The State presented more than sufficient evidence to demonstrate that Officer Petrosh had "reasonable grounds" to believe that Jacobs was driving under the influence of alcohol before he arrested her. The unchallenged testimony of Officer Petrosh established that Jacobs' face was flushed, her speech was "slurred" and "mush-mouthed," and that an odor of alcoholic beverage was present when she was pulled over. In addition, Officer Petrosh knew that a caller had reported that Jacobs was driving erratically. In the face of this evidence, we conclude that the error found by the trial court could not have affected the result of the ALS hearing. *See Red Hill Outing Club v. Hammond,* 143 N.H. 284, 289 (1998).

*Reversed and remanded.*

BRODERICK, NADEAU and DALIANIS, JJ., concurred; BROCK, C.J., dissented.

BROCK, C.J., dissenting. Because I believe that *Lopez v. Director, New Hampshire Division of Motor Vehicles,* 145 N.H. 222 (2000), was wrongly decided, I respectfully dissent. Part I, Article 19 of the New Hampshire Constitution protects a strong right of privacy, *State v. Canelo,* 139 N.H. 376, 387 (1995), generally affording greater protection than the Fourth Amendment to the Federal Constitution, *e.g., id.; State v. Ball,* 124 N.H. 226, 235 (1983). Both *Lopez* and today's majority opinion interfere with New Hampshire citizens' "right to be secure from all unreasonable searches and seizures." N.H. CONST. pt. I, art. 19.

In concluding that the exclusionary rule does not apply to license suspension cases, *Lopez* failed to analyze whether the exclusionary rule's

deterrence benefits outweigh its social costs. *See Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 363-69 (1998) (balancing deterrence benefits and social costs). Nor did *Lopez* acknowledge that New Hampshire's exclusionary rule serves multiple purposes: deterring police misconduct, guaranteeing compliance with the probable cause requirement of Part I, Article 19, and redressing the injury to the privacy of the search victim. *Canelo*, 139 N.H. at 386-87.

*Lopez* asserts that the United States Supreme Court has specifically limited the exclusionary rule to criminal trials. *See Lopez*, 145 N.H. at 225. This is an inaccurate characterization — while the Court generally applies the exclusionary rule only in criminal proceedings, this is not a *per se* rule. *See Scott*, 524 U.S. at 364 n.4; *Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 702 (1965); *Tirado v. C.I.R.*, 689 F.2d 307, 313-14 (2d Cir. 1982), *cert. denied*, 460 U.S. 1014 (1983); Spill, *The Lopez Decision: Drivers Beware*, 42 N.H. BAR J. 1, 38 (2001).

For example, the Court has applied the narrower federal exclusionary rule to a civil forfeiture proceeding where the forfeiture was a penalty for a criminal offense. *See Plymouth Sedan*, 380 U.S. at 702. There the Court noted that the forfeiture proceeding was a quasi-criminal proceeding involving the same governmental agency that had conducted the illegal search; furthermore, the forfeiture penalty potentially exceeded the criminal penalty. *Id.* at 697-701; *see also United States v. One 198X Ford Mustang*, 749 F. Supp. 324, 328-29 (D. Mass. 1990) (applying *Plymouth Sedan* in civil forfeiture proceeding). Here, the criminal penalty is a fine of at least $350 in addition to license suspension from ninety days to two years. RSA 265:82-b (Supp. 2002). Here, as in *Plymouth Sedan*, the civil penalty derives from the same underlying criminal offense, and the detrimental value of the civil penalty could actually exceed the criminal penalty.

Under *Lopez*, an unconstitutional traffic stop, *see State v. Koppel*, 127 N.H. 286, 294 (1985) (drunk driving road blocks *per se* unreasonable in violation of New Hampshire Constitution), can form the basis for a lengthy license suspension. In the past we have recognized that the privilege of holding a driver's license is a legally protected interest requiring due process prior to suspension. *Bragg v. Director, N.H. Div. of Motor Vehicles*, 141 N.H. 677, 678 (1997). The New Hampshire Constitution should be interpreted to protect our citizens' strong right of privacy and their legally protected interest in driver's licenses by preventing license suspension after an unconstitutional search or seizure.