Opinion by Judge BOORAS.
¶ 1 Petitioner, Andrew Hanson, appeals the district court's judgment affirming the administrative order entered by respondent, the Colorado Department of Revenue (Department), revoking Hanson's driver's license for one year. We affirm the district court's judgment.
I. Background
¶ 2 A private citizen saw a vehicle strike a highway sign after being driven erratically and at excessive speed. The citizen contacted law enforcement and followed the vehicle to a private residence.
¶ 3 Deputy Ashby was the first officer to arrive at the residence. According to his report, he looked through a garage window and saw a damaged vehicle matching the description of the reported vehicle. Deputy Ashby's report further indicated that the front door of the residence was open and that he "pushed open the door and made announcements."
¶ 4 According to his report, Deputy Ashby then made contact with a female who said that her boyfriend had come home and was acting strangely. When the female subsequently brought Hanson downstairs, he exhibited indicia of alcohol intoxication and admitted he had consumed alcohol.
¶ 5 Hanson was transported to a hospital where he continued to show indicia of alcohol intoxication. He was eventually placed under arrest by a different officer and was advised of his options under the express consent *3 statute. Based on Hanson's refusal to cooperate, the officer deemed him to have refused testing and issued a notice of revocation.
¶ 6 Hanson timely requested a hearing. He also sought and obtained an administrative subpoena from the Department requiring Deputy Ashby's appearance.
¶ 7 When Deputy Ashby failed to appear at the hearing, Hanson's counsel sought dismissal, arguing, based on Deputy Ashby's report, that the initial entry into the residence appeared to be illegal, and that he needed to question Deputy Ashby about the details surrounding the entry to determine whether it was constitutionally permissible.
¶ 8 The hearing officer accepted that Deputy Ashby had been properly served with the subpoena. However, he denied Hanson's request for dismissal and, in effect, quashed the subpoena, concluding that dismissal was too drastic a remedy and that Deputy Ashby's appearance was "not necessary" because he had "limited contact" with Hanson and had "little to do with the case in chief."
¶ 9 Then, relying largely on the contents of Deputy Ashby's written report, the hearing officer concluded that Deputy Ashby was justified in entering the house based on a reasonable belief the driver of the vehicle might be injured. The hearing officer further concluded that once Deputy Ashby was inside the residence, the subsequent contact with Hanson was consensual. Based on these conclusions and other findings, the hearing officer sustained the revocation.
¶ 10 On review in the district court, Hanson argued, as pertinent here, that the hearing officer violated his due process rights including, specifically, his right to cross-examination, by declining to dismiss the action or impose any remedy based on Deputy Ashby's failure to appear at the hearing.
¶ 11 In affirming the revocation, the district court "discern[ed] no error in the hearing officer's finding that Deputy Ashby's testimony was not required" and concluded that "the hearing officer did not err in proceeding in Deputy Ashby's absence."
II. Analysis
¶ 12 Hanson contends that we should reverse the revocation order because the hearing officer erroneously denied him the opportunity to cross-examine Deputy Ashby about the circumstances surrounding his entry into the residence. We disagree.
A. Standard of Review
¶ 13 Judicial review of driver's license revocation orders is governed by section 42-2-126(9)(b), C.R.S.2011. That statute provides that a reviewing court may reverse the Department's determination if it (1) exceeded its constitutional or statutory authority, (2) erroneously interpreted the law, (3) acted in an arbitrary and capricious manner, or (4) made a determination that is unsupported by the evidence in the record. See Baldwin v. Huber, 223 P.3d 150, 152 (Colo.App.2009). Additionally, a court may reverse a revocation order if a statutory violation by the Department prejudices the substantial rights of a licensee. Erbe v. Colo. Dep't of Revenue, 51 P.3d 1096, 1098 (Colo.App.2002) ; Nye v. Motor Vehicle Div., 902 P.2d 959, 961 (Colo.App.1995).
¶ 14 The credibility of witnesses, the weight to be given to the evidence, and the resolution of conflicting evidence are factual matters solely within the province of the hearing officer as trier of fact. See Baldwin, 223 P.3d at 152. However, we review de novo agency determinations regarding questions of law. See Meyer v. State, 143 P.3d 1181, 1187 (Colo.App.2006). We are in the same position as the district court in reviewing the Department's action in the revocation proceedings under the administrative record. Baldwin, 223 P.3d at 152.
B. Illegality of Initial Police Contact as a Defense
¶ 15 Hanson argues that Deputy Ashby's entry into his residence violated his rights under the Fourth Amendment unless the entry was supported by exigent circumstances.[1] Hanson's counsel conceded at oral *4 argument that if the Fourth Amendment exclusionary rule does not apply, Hanson's Fourth Amendment claim fails. We agree with the division in Francen v. Colorado Department of Revenue, Division of Motor Vehicles, 2012 COA 110, 411 P.3d 693, that it does not. Francen, ¶ 36; see also Nevers v. State, 123 P.3d 958, 961-66 (Alaska 2005) ; Tornabene v. Bonine ex rel. Ariz. Highway Dep't, 203 Ariz. 326, 54 P.3d 355, 363-65 (App.2002) ; Fishbein v. Kozlowski, 252 Conn. 38, 743 A.2d 1110, 1118-19 (1999) ; Martin v. Kansas Dep't of Revenue, 285 Kan. 625, 176 P.3d 938, 949-53 (2008) ; Powell v. Sec'y of State, 614 A.2d 1303, 1306-07 (Me.1992) ; Riche v. Dir. of Revenue, 987 S.W.2d 331, 333-36 (Mo.1999) ; Chase v. Neth, 269 Neb. 882, 697 N.W.2d 675, 682-85 (2005) ; Lopez v. Dir., N.H. Div. of Motor Vehicles, 145 N.H. 222, 761 A.2d 448, 450-51 (2000) ; Holte v. State Hwy. Comm'r, 436 N.W.2d 250, 252 (1989) ; State v. Brabson, 976 S.W.2d 182, 184-86 (Tex.Crim.App.1998) ; Beller v. Rolfe, 194 P.3d 949, 951-55 (Utah 2008).
1. Requirements of the Fourth Amendment
¶ 16 The Fourth Amendment has "drawn a firm line" at the entrance to a person's home. Payton v. New York, 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The warrantless entry into a person's home to conduct a search is presumptively unreasonable unless a well-established exception to the warrant requirement applies, such as when both probable cause and exigent circumstances exist. People v. Mendoza-Balderama, 981 P.2d 150, 156 (Colo.1999). Violations of the Fourth Amendment are remedied by the judicially created "exclusionary rule," which is intended to deter illegal police contact by requiring suppression of evidence obtained following the initial unlawful contact. United States v. Calandra, 414 U.S. 338, 347-48, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) ; Ahart v. Colo. Dep't of Corr., 964 P.2d 517, 520 (Colo.1998).[2]
¶ 17 The exclusionary rule applies routinely in criminal cases, but not so in civil cases. Francen, ¶ 37; Ahart, 964 P.2d at 520. "In determining whether the exclusionary rule should apply in a civil case, a court must balance the likely deterrent effect against the societal cost of excluding relevant evidence: only when the former outweighs the latter should the rule apply." Francen, ¶ 38. To assess the likely deterrent effect, the court must consider "(1) whether the illegal agency conduct is 'inter-sovereign' or 'intrasovereign'; and (2) whether the proceedings may be characterized as 'quasi-criminal.' " Id. at ¶ 39 (quoting Ahart, 964 P.2d at 520 ). Neither consideration is dispositive. Ahart, 964 P.2d at 521 ; see I.N.S. v. Lopez-Mendoza, 468 U.S. 1032, 1042-45, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984) (exclusionary rule did not apply in deportation proceeding even though agency conduct was intra-sovereign).
¶ 18 Here, as discussed in Francen, the conduct at issue is inter-sovereign, and thus application of the exclusionary rule would result in only marginal deterrence. Francen, ¶ 40. Also, as discussed in Francen, the proceeding is not quasi-criminal because the primary objective of the driver's license revocation statute is to protect public safety. Francen, ¶ 41; see § 42-2-126(1)(a)-(c), C.R.S.2011. Although driver's license revocation proceedings play a role in the law enforcement process, the United States Supreme Court has "repeatedly declined to extend the exclusionary rule to proceedings other than criminal trials," even to civil proceedings that are closely related to criminal law enforcement. Pennsylvania Bd. of Probation & Parole v. Scott, 524 U.S. 357, 363, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998) (the exclusionary rule does not apply in parole revocation proceeding); Calandra, 414 U.S. at 347-48, 94 S.Ct. 613 (the exclusionary rule does not apply to grand jury proceedings).
¶ 19 The dissent discusses facts relevant to the constitutionality of Deputy Ashby's entry into Hanson's home and observes that in a *5 related criminal case, the district court concluded that Deputy Ashby's entry into the home violated Hanson's constitutional rights and entered a suppression order. This related criminal proceeding is exactly where the exclusionary rule should be applied; however, it should not be applied in this civil driver's license revocation proceeding. Applying the exclusionary rule in Hanson's related criminal case accomplishes the deterrence of Fourth Amendment violations that was intended by the exclusionary rule. See Scott, 524 U.S. at 367-68, 118 S.Ct. 2014 (exclusion of evidence from a criminal case will have more deterrent effect on police officers' conduct than exclusion of that evidence from a parole revocation proceeding because the police officers' focus is upon obtaining convictions of those who commit crimes); United States v. Janis, 428 U.S. 433, 458, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) (where evidence is excluded in the criminal trial with which the searching officer is concerned, excluding the evidence in a civil proceeding "is unlikely to provide significant, much less substantial, additional deterrence").
¶ 20 In contrast, applying the exclusionary rule in this driver's license revocation proceeding would result in needless societal costs. As discussed in Francen, exclusion would thwart the public safety objective of the revocation laws. Francen, ¶ 43. Additionally, applying the exclusionary rule in driver's license revocation proceedings would burden the administrative hearing process by requiring suppression hearings in proceedings that were intended to be limited in scope. The revocation statutes "plainly envision a quick determination based on the single issue of whether a driver operated a motor vehicle or vehicle with excessive blood alcohol content or refused a request for chemical testing." Id.
¶ 21 Thus, like the division in Francen, we conclude that the Fourth Amendment exclusionary rule does not apply in this case. Id. at ¶ 44.
2. Statutory Probable Cause Requirement
¶ 22 The dissent in this case does not address whether the Fourth Amendment exclusionary rule is applicable to driver's license revocation proceedings. Instead, although Hanson did not make an argument that the revocation statutes provided an independent basis for challenging the entry into his home, the dissent concludes that Hanson had a general right to challenge the lawfulness of entry into his residence by implication from the statutory use of the phrase "probable cause."
¶ 23 We reject this conclusion for two reasons: (1) we agree with the Francen majority that the use of the term "probable cause" in the context of driver's license revocation statutory requirements describes only the quantum and quality of evidence known to the officer about whether the driver either had driven in violation of drinking and driving laws or had refused to submit to testing; and (2) assuming that the use of the phrase "probable cause" in the license revocation statutes permits a statutory challenge to initial contact by police based on lack of probable cause, the plain language does not implicate the requirement of exigent circumstances, which was the Fourth Amendment component at issue in this case.
¶ 24 Section 42-2-126(5)(a), C.R.S.2011, provides that "a law enforcement officer ha[ving] probable cause to believe that a person should be subject to license revocation for excess [blood alcohol content] or refusal" to take or complete a chemical test shall submit an affidavit to the Department "containing information relevant to the legal issues and facts that shall be considered by the department to determine whether the person's license should be revoked as provided in subsection (3) of this section." Additionally, section 42-4-1301.1(2)(a)(I), C.R.S.2011, provides that "a law enforcement officer having probable cause to believe that the person was driving a motor vehicle in violation of the prohibitions against DUI, DUI per se, DWAI, habitual user, or UDD" may request that the driver take and complete a chemical test. As discussed in Francen , neither statute says anything about the initial contact between the officer and the driver, much less that the circumstances of the initial stop are relevant to the Department's determination of whether a driver's license *6 should be revoked. Concluding that a driver may challenge the lawfulness of an initial stop would effectively add language to the revocation statutes. Francen, ¶ 24; see Scoggins v. Unigard Ins. Co., 869 P.2d 202, 205 (Colo.1994) ("We will not judicially legislate by reading a statute to accomplish something the plain language does not suggest, warrant or mandate.").
¶ 25 Even assuming, however, that the statutory use of the phrase "probable cause" permits a challenge to initial contact by police based on lack of probable cause, it does not implicate the requirement of exigent circumstances.[3] Probable cause and exigent circumstances are separate components of the "exigent circumstances exception" to warrantless searches. See Payton, 445 U.S. at 587-88, 100 S.Ct. 1371 (recognizing "long-settled premise that absent exigent circumstances, a warrantless entry to search for weapons or contraband is unconstitutional even when a felony has been committed and there is probable cause to believe that incriminating evidence will be found within").
¶ 26 Hanson did not argue in the trial court or on appeal that there was insufficient probable cause to arrest him for DUI or some other offense, such as reckless driving.[4] Instead, Hanson asserts on appeal, as he did in the trial court, that the police entry into his home violated the Fourth Amendment because it was not justified by exigent circumstances. Although the dissent perceives Hanson's attack on the "legality of the home intrusion" as encompassing the sufficiency of probable cause, Hanson's specific allegations were as follows:
The entry into the home was unconstitutional. Deputy Ashby did not have a warrant and the record is void of any exigent circumstances (there is not a claim of exigency in Deputy Ashby's report). Instead, the DMV's Order found that a police officer's warrantless entry into a home without the consent of the occupants was a consensual encounter because an occupant of the home did not object once the violation had occurred. Such a finding is clearly erroneous.
¶ 27 Because the exclusionary rule of the Fourth Amendment is inapplicable here, and because the revocation statutes do not independently address entry into a residence or an exigent circumstances requirement, Hanson had no defense based on illegality of the initial police contact with him.
C. Deputy Ashby's Failure to Appear
¶ 28 At the hearing in this case, Hanson's counsel advised the hearing officer that he desired to cross-examine Deputy Ashby about "the details surrounding his entry" in order to contest the legality of Ashby's initial entry into the home. Because, as discussed above, Hanson had no right to challenge the entry into his home in this license revocation proceeding, he was not deprived of his right to due process by Ashby's failure to appear for confrontation.
¶ 29 Section 42-2-126(1)(b), C.R.S.2011, provides that one express purpose of the driver's license revocation statute is "[t]o guard against the potential for any erroneous deprivation of the driving privilege by providing an opportunity for a full hearing." Consistent with this purpose, licensees facing possible revocation have the statutory right "to conduct such cross-examination as may be required for a full and true disclosure of the facts." Nye, 902 P.2d at 961 (quoting portion of State Administrative Procedure Act, section 24-4-105(7), C.R.S 2011, made applicable to revocation proceedings by section 42-2-126(11), C.R.S.2011 ). Licensees may also ask the Department to issue administrative subpoenas to secure attendance of witnesses. See §§ 24-4-105(4), 42-2-126(8)(d)(VII), C.R.S.2011; Fallon v. Colo. Dep't of Revenue, 250 P.3d 691, 693-95 (Colo.App.2010) ; Nye, 902 P.2d at 961 ; see also *7 Dep't of Revenue Rule 5.8, 1 Code Colo. Regs. 211-2.
¶ 30 While a revocation may be sustained solely through an officer's hearsay statements without violating a licensee's due process rights, a significant consideration in avoiding a due process violation in those circumstances is that the licensee have the opportunity to subpoena, confront, and cross-examine the officer. See Colo. Dep't of Revenue v. Kirke, 743 P.2d 16, 21 (Colo.1987) (noting that licensee had opportunity to confront and cross-examine "any of the officers involved" and had "right to subpoena initial officer and cross-examine him, but failed to do so"); see also Halter v. Dep't of Revenue, 857 P.2d 535, 539 (Colo.App.1993) (rejecting argument that licensee's due process rights were violated because he could not cross-examine officer who was not present at revocation hearing and whose written report was admitted into evidence; licensee had right to subpoena officer to require his attendance but failed to do so).
¶ 31 Applicable regulations provide that if a properly served witness (other than the officer who signed the express consent affidavit) fails to appear, the licensee must make an offer of proof regarding the specific nature, content, and relevance of the witness's testimony. See Dep't of Revenue Rule 5.10.3.1, 1 Code Colo. Regs. 211-2. The hearing officer may quash the subpoena if the appearance of the witness "would not provide relevant and necessary information, or ... the evidence would be needlessly cumulative." Dep't of Revenue Rule 5.10.3.2, 1 Code Colo. Regs. 211-2.
¶ 32 Here, in quashing the validly issued subpoena for Deputy Ashby, the hearing officer stated: "Counsel [for Hanson] argued he wished for Deputy Ashby to be present to clarify whether he entered the residence. The [h]earing [o]fficer concedes he did so. Therefore, Ashby's presence is not necessary." Although Hanson's offer of proof and argument concerning the reason for subpoenaing Deputy Ashby were broader than simply establishing that Deputy Ashby had entered the residence, the proposed testimony was nevertheless irrelevant because its only purpose was to establish a Fourth Amendment violation. Counsel's expressed motivation was to inquire about "the details surrounding his entry" and, specifically, whether that entry was illegal under the circumstances based on the contents of his written report.
¶ 33 Because Hanson had no right to challenge the validity of the initial police contact, the hearing officer did not err in concluding that Deputy Ashby's proposed testimony was "not necessary." Thus, Hanson was not deprived of his statutory right to cross-examine Deputy Ashby.
¶ 34 The judgment is affirmed.
Judge TERRY concurs.
Judge FOX dissents.

Although the dissent discusses the lack of record support for the hearing officer's conclusion that exigent circumstances supported the entry, the exigent circumstances finding is simply irrelevant if the exclusionary rule does not apply.

A police officer's unconstitutional entry into a home may also trigger a claim for damages under 42 U.S.C. § 1983.

The cases cited by the dissent in support of a general right to challenge initial police contact in driver's license revocation proceedings all involve whether there was sufficient probable cause or reasonable suspicion to stop the arrested driver's vehicle. See section 42-4-1302, C.R.S.2011 (providing for a stop on reasonable suspicion that a person has committed a DUI offense).

Colorado permits police officers to arrest for misdemeanors committed outside of their presence upon probable cause. § 16-3-102(1)(c), C.R.S.2011.