Rockingham
No. 2003-0772

MICHAEL SAVIANO

v.

DIRECTOR, N.H. DIVISION OF MOTOR VEHICLES

Argued: June 17, 2004<br>Opinion Issued: August 26, 2004

*Law Office of Mark Stevens*, of Salem (*Mark Stevens* on the brief and orally), for the plaintiff.

*Kelly A. Ayotte,* acting attorney general (*Andrew B. Livernois,* assistant attorney general, on the brief and orally), for the defendant.

BRODERICK, C.J. The plaintiff, Michael Saviano, appeals the order of the Superior Court (*T. Nadeau,* J.) affirming the decision of the New Hampshire Department of Safety hearings officer upholding the suspension of his driver's license by the defendant, the director of the division of motor vehicles. We affirm.

The record supports the following facts. On June 17, 2003, Sergeant Fisher of the Pelham Police Department, while off-duty and driving his own private vehicle, observed the plaintiff's vehicle crossing the center and fog lines and exceeding the speed limit on Marsh Road in Pelham. He followed the plaintiff and radioed dispatch to request that a marked cruiser respond to a vehicle "operating erratically."

Sergeant McDowell and Officer Stahl responded in separate cruisers and pursued the plaintiff with their emergency lights and sirens activated. The plaintiff continued to drive erratically and failed to stop. Sergeant McDowell pulled beside him and edged the plaintiff's vehicle to the side of the road. As the plaintiff came to a stop, he "swerved to the side of the road and then swerved back on the road just missing [a] mailbox."

Sergeant McDowell and Officer Stahl ordered him out of his car and he refused. After the order was repeated numerous times, Officer Stahl opened the driver's door and ordered the plaintiff to step out. The plaintiff attempted to shut the door, but the officer successfully forced him out of the car. He then arrested him for disobeying a police officer because he failed to stop when signaled to do so. The plaintiff was placed in Officer Stahl's cruiser for transport to the police station. While en route, the officer detected a strong odor of alcohol emanating from the plaintiff.

At the police station, Officer Stahl read him a modified Administrative License Suspension (ALS) or Implied Consent form because he was under arrest for disobeying a police officer and the officers suspected that he had been driving while intoxicated. Section I, lines 1–6 of a standard ALS form read:

1. You have been arrested for an offense arising out of acts alleged to have been committed while you were driving under the influence of alcohol or drugs.
2. You are being asked to submit to a test or tests, at the discretion of a law enforcement officer, in order to determine the alcohol or drug concentration in your system. You may be asked to perform a breath, blood or urine, or physical test, or any combination of these.

3. You have the right to a similar test or tests of blood, urine or breath taken by a person of your own choosing at your own expense. Upon your request, you will be given the opportunity for such additional test(s). You also have the right to obtain a portion of our sample of your breath, blood, or urine for testing at your own expense.

4. If you submit to a blood, urine or breath test which shows an alcohol concentration of 0.08 or more (or if you are under age 21, of 0.02 or more), your New Hampshire driver's license/operating privileges or non-resident operating privilege or right to drive in this state will be suspended.

5. If you refuse to take a test or tests, the refusal can be admissible in court.

6. If you refuse to submit to a test requested by the officer, your New Hampshire driver's license/operating privileges or non-resident operating privilege to drive in this state will be suspended.

In Section I of the modified ALS form read to the plaintiff, lines 3 and 4 had a line through them and lines 1 and 2 had been altered to read:

1. You have been arrested for an offense of Disobeying an Officer.

2. You are being asked to submit to a test, at the discretion of a law enforcement officer, in order to determine the alcohol or drug concentration in your system. You may be asked to perform a physical test.

The plaintiff signed the form in two places, indicating that he had been informed of his rights and that he agreed to the requested testing.

The plaintiff then took and failed three field sobriety tests. Officer Stahl then asked the plaintiff to take a preliminary breath test (PBT), advising him that "[it] was not his breath test, [and that] it was unofficial." He informed him that it was just to prove or disprove what he had already witnessed while conducting the field sobriety tests. The plaintiff agreed to take the test. The PBT revealed a Blood Alcohol Content of 0.141, confirming Officer Stahl's suspicion that the plaintiff was driving while under the influence of alcohol. *See* RSA 265:82 (Supp. 2003).

Officer Stahl then charged the plaintiff with driving while under the influence of alcohol and read him a standard ALS form. The plaintiff refused to sign it or submit to the requested breath test. Accordingly, on June 23, 2003, the director of the division of motor vehicles suspended his driver's license pursuant to RSA 265:92 (Supp. 2003).

The plaintiff requested an ALS hearing and, on August 5, 2003, the hearings officer upheld the suspension. On October 30, 2003, the superior court affirmed the decision of the hearings officer. This appeal followed.

The plaintiff argues that: (1) RSA 265:84 (Supp. 2003), the implied consent statute, does not apply unless a driver is arrested for an offense alleging operation under the influence of liquor or a controlled drug or a combination of both; (2) the revocation of his driver's license violated his due process rights because the modified ALS form, read to him while he was in custody for disobeying a police officer, as opposed to driving under the influence, was inaccurate, misleading and prejudicial; (3) the use of the PBT result at the ALS hearing violated his due process rights; and (4) the administration of the PBT prejudiced his ability to make an informed decision whether to submit to the second requested breath test.

In an appeal to the superior court from an ALS hearing, the plaintiff has the burden to show that the order upholding the suspension was clearly unreasonable or unlawful, and all findings of fact on questions properly before the hearings officer are deemed to be *prima facie* lawful and reasonable. RSA 263:75, II (Supp. 2003); *Jacobs v. Director, N.H. Div. of Motor Vehicles*, 149 N.H. 502, 503 (2003). We defer to the trial court's factual findings, provided there is evidence in the record to support them. *Jacobs*, 149 N.H. at 503. However, we review the trial court's application of the law to the facts *de novo. Id.* at 504.

The plaintiff first argues that the implied consent statute does not apply unless a driver is arrested for an offense alleging operation under the influence of liquor or a controlled drug or a combination of both. He contends that because the implied consent statute had not been triggered at the time the officer read him the modified ALS form, his rights to due process under Part I, Article 15 of the State Constitution and the Fourteenth Amendment to the Federal Constitution were violated. We disagree.

In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *Phetteplace v. Town of Lyme*, 144 N.H. 621, 624 (2000). In interpreting a statute, we first look to the language of the statute itself and, if possible, construe that language according to its plain and ordinary meaning. *Appeal of Northeast Rehab. Hosp.*, 149 N.H. 83, 85 (2003). Where the language is clear on its face, its meaning is not subject to modification. *Marcotte v. Timberlane/Hampstead School Dist.*, 143 N.H. 331, 337 (1999). Unless we find that the statutory language is ambiguous, we need not look to legislative intent. *Appeal of Town of Newington*, 149 N.H. 347, 352 (2003). We review the trial court's interpretation of a statute

*de novo. Monahan-Fortin Properties v. Town of Hudson*, 148 N.H. 769, 771 (2002).

■ The implied consent statute provides that a motor vehicle operator "shall be deemed to have given consent" to the tests it describes when "arrested for any offense arising out of acts alleged to have been committed while the person was driving ... a vehicle while under the influence of intoxicating liquor or controlled drugs," provided the tests are "administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving ... while under the influence of intoxicating liquor or controlled drugs." The plain meaning of the statute indicates that it applies following an arrest for *any offense*, so long as it was allegedly committed *while* the person was driving under the influence of intoxicating liquor or controlled drugs.

In this case, the plaintiff was arrested for disobeying a police officer because he failed to stop when signaled to do so, an offense purportedly committed while he was driving under the influence of alcohol. Indeed, Officer Stahl testified that he utilized the modified ALS because the plaintiff was "under arrest for disobeying a police officer, and we had suspicions that [the plaintiff] was also driving while intoxicated."

■ By the time Officer Stahl read the modified ALS form to the plaintiff, he and Sergeants Fisher and McDowell had all observed the plaintiff operating erratically, he and Sergeant McDowell had witnessed the plaintiff's uncooperative behavior, and he had detected a strong odor of alcohol emanating from the plaintiff. Based upon that evidence, Officer Stahl had reasonable grounds to believe that the plaintiff was driving while under the influence of alcohol. *See Jacobs*, 149 N.H. at 506. Consequently, the plaintiff was subject to the statute when Officer Stahl read the modified ALS form to him.

■ The plaintiff next contends that the revocation of his driver's license violated his due process rights because the modified ALS form, read to him while he was in custody for disobeying an officer, as opposed to driving under the influence, was inaccurate, misleading and prejudicial. He argues that "[w]hen the officer advised [him] that his driver's license would be suspended if he did not submit to field sobriety testing, despite the fact that he was not under arrest for [driving under the influence], the advice was misleading and inaccurate." The plaintiff's contention that the modified ALS form was "inaccurate, misleading and prejudicial" is not based on the contents of the form, but on the premise that he was not subject to the implied consent statute since he was not arrested for driving under the influence. Given our previous holding that he was subject to the

statute at the time the modified ALS form was read to him, his argument fails.

The plaintiff also argues that admitting the result of the PBT at the ALS hearing violated his due process rights. He asserts that the officer's advice regarding the PBT "would have led a reasonable person to believe that the result of the PBT would not be used against him," and that his advice was "lacking in fundamental fairness and offensive to the universal sense of fair play."

We begin by analyzing this issue under the State Constitution, *State v. Ball*, 124 N.H. 226, 231 (1983), citing federal authority only to aid in our analysis, *id.* at 233. The ultimate standard for judging a due process claim is the notion of fundamental fairness. *State v. Denney*, 130 N.H. 217, 220 (1987). Fundamental fairness requires that government conduct conform to the community's sense of justice, decency and fair play. *See Roberts v. State of Me.*, 48 F.3d 1287, 1291 (1st Cir. 1995).

In this case, it was not fundamentally unfair to admit the PBT result at the ALS hearing because before administering the PBT, Officer Stahl had informed the plaintiff that it would be used to "prove or disprove what [Officer Stahl] had already seen [while] conducting the field sobriety tests." Indeed, the hearings officer concluded that the State was "not offering it as . . . proof of the ultimate fact, but . . . just . . . [to] bolster[] . . . the officer's observations." Although certain parts of Officer Stahl's comments to the plaintiff downplayed the significance of the PBT, a fair reading of his statement indicates that the plaintiff was warned of the one purpose for which the PBT would be used. Accordingly, and contrary to the plaintiff's assertion, a reasonable person would not have concluded that the result of the PBT would not be used against him for that limited purpose.

Although "[n]otions of fundamental fairness in the context of due process as a constitutional right are matters for determination by the judiciary, not the legislature," *Opinion of the Justices*, 131 N.H. 583, 589 (1989), we note that the admission of the PBT result in this case was in accord with RSA 265:92-a (Supp. 2003) (amended 2003), which provided, in relevant part, that: "The results of [a PBT] may be admissible in evidence for the sole purpose of determining whether the officer had probable cause to arrest . . . ."

Here, because the plaintiff was neither placed at a disadvantage nor unfairly prejudiced by Officer Stahl's comments or the admission of the PBT result at the ALS hearing, we hold that the plaintiff's right to due process under the State Constitution was not violated. Because the Federal Constitution affords the plaintiff no greater protection in this

context, we reach the same conclusion under the Federal Constitution as we do under the State Constitution. *See Roberts*, 48 F.3d at 1291-96 (holding that the defendant's due process rights were violated by refusal to allow him to contact counsel after he was given misleading information on consequences of refusal to take blood/alcohol test).

 Even if the admission of the PBT result was error, it was harmless. In this case, the hearings officer found that even without the PBT result "there would still appear to be sufficient grounds available to the officer to conclude that the [plaintiff] was driving while impaired such that the arrest [for driving while intoxicated] was warranted." These grounds included "an odor of alcohol on the [plaintiff], erratic operation, slurred speech, bloodshot glassy eyes, [and] general demeanor." The plaintiff does not challenge these findings on appeal. Accordingly, we hold that the admission of the PBT result did not affect the outcome of the ALS hearing. *See Jacobs*, 149 N.H. at 506 (applying harmless error analysis in ALS hearing context).

Finally, the plaintiff argues that the administration of the PBT prejudiced his ability to make an informed decision whether to submit to the second requested breath test. He argues that "[t]he proximity in time between displaying the results of the PBT and asking [him] to submit to another breath test, coupled with [his] otherwise cooperative response to all the other requests by the officer, shows a causal connection between the [PBT and his refusal]." Since the plaintiff does not claim error with the manner in which either the PBT was administered or the second breath test was requested, his final argument is without merit and warrants no further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

*Affirmed.*

DALIANIS, DUGGAN and GALWAY, JJ., concurred.