Strafford
No. 2003-757

PETITION OF THE STATE OF NEW HAMPSHIRE
(State v. Fischer)

Submitted: January 19, 2005
Opinion Issued: May 12, 2005

206

*Kelly A. Ayotte*, attorney general (*Peter K. Odom*, assistant attorney general, on the brief), for the State.

*David Fischer*, by brief, *pro se*.

DALIANIS, J. In this petition for writ of certiorari, the State of New Hampshire (State) seeks review of a decision of the Superior Court (*Fauver*, J.) to suspend two and one-half years of the defendant's sentence. *See* RSA 651:20, I (1996). We reverse.

In November 1996, the defendant, David Fischer, was convicted of attempted first-degree assault, *see* RSA 629:1 (1996); RSA 631:1 (1996), and witness tampering, *see* RSA 641:5 (1996). The Superior Court (*Mohl*, J.) imposed a sentence of seven and one-half to fifteen years on the attempted first-degree assault offense, and a consecutive sentence of three and one-half to seven years on the witness tampering offense. In February 2001, the defendant filed a petition for suspension of his sentence. On June

4, 2001, the court denied the petition, but it granted the defendant leave to refile his petition to suspend sentence after May 15, 2003.

On March 26, 2003, the defendant filed a second petition to suspend sentence. On June 18, 2003, the court issued an order scheduling a hearing and noting that the State had failed to respond to the defendant's petition. On June 25, 2003, the court received the State's objection, dated April 4, 2003, to the defendant's petition. The objection contained no explanation why a response had not been filed earlier. The objection did specify that a copy had been sent to the defendant's counsel, though defense counsel stated at the hearing that neither he nor the defendant ever received a copy of the objection.

On July 23, 2003, the court held a hearing, at which the State argued, for the first time, that the court lacked statutory authority under RSA 651:20, I, to hear the defendant's petition. The defendant objected on two grounds. First, he argued that the State had not filed a timely objection to his March 26, 2003 petition to suspend sentence. Second, he objected to the State's failure to raise the issue of the court's statutory authority under RSA 651:20, I, in its written objection.

As to the defendant's first objection, the court concluded that it would "find that the fact that [the State's written objection] did not enter into the file . . . was certainly not an intentional matter by the county attorney's office; it could have been the court's filing; it could have been the county attorney's failure." The court allowed the hearing to continue, noting that the defendant had not been prejudiced in any way. As to the second objection, the court offered the defendant ten days to file a memorandum on the issue. The defendant did not file a memorandum.

On September 3, 2003, the court issued an order suspending two and one-half years of the defendant's witness tampering sentence. The court sent the order to the State in the form of a "Notice of Amendment to Sentence"; however, the notice was not signed or dated by the clerk of the court. On September 17, 2003, the State filed a motion for reconsideration of the court's order, which was denied on October 20, 2003. On November 19, 2003, the State filed a petition for writ of certiorari arguing that the trial court lacked statutory authority under RSA 651:20, I, to suspend the defendant's sentence.

We will first address the defendant's argument that the State's petition for writ of certiorari is untimely. Second, we will address the defendant's argument that the State is procedurally barred from contesting his petition. Third, we will address the State's argument that the trial court exceeded the statutory authority provided by RSA 651:20, I, when it accepted and granted the defendant's March 26, 2003 petition to suspend

sentence. The final issue we will address is the defendant's argument that RSA 651:20, I, is ambiguous and cannot be interpreted to bar his petition.

The defendant argues that the State's petition for writ of certiorari was not timely filed. Appeals by the State in criminal cases are normally governed by RSA 606:10 (2001). In the present case, however, RSA 606:10 does not provide the State with any recourse. Thus, the State petitioned this court to exercise its original jurisdiction. *See* RSA 490:4 (1997).

■ Petitions requesting this court to exercise its original jurisdiction are governed by Supreme Court Rule 11. Supreme Court Rule 11 does not contain a filing deadline. We have exercised our discretion in the past to bar petitions for writ of certiorari when such petitions were filed after an unreasonable period of time. We have ruled that the reasonable period for filing a petition for writ of certiorari should be determined by the appeal period set out in a substantially analogous statute or situation. *Chauffeurs Local Union No. 633 v. Silver Bro's, Inc.*, 122 N.H. 1035, 1037 (1982).

■ Like Supreme Court Rule 11, RSA 606:10, which governs appeals by the State, does not contain a filing deadline. With respect to RSA 606:10 appeals, we have stated: "Although the Supreme Court Rules do not specify a time limit for the filing of appeals by the State, they provide time limits for the filing of appeals generally." *State v. Dukette*, 145 N.H. 226, 228 (2000). "Because the policy behind time limits for appeals filed under our rules would similarly apply to RSA 606:10 appeals, ... appeals filed by the State pursuant to RSA 606:10 are subject to the same timeliness requirements that govern all supreme court appeals under Supreme Court Rules 7-9." *Id.*

RSA 606:10 appeals are substantially analogous to the petition for writ of certiorari in this case. As such, this petition should be governed by Supreme Court Rule 7, which provides time limits applicable to appeals under RSA 606:10. *Cf. Dukette*, 145 N.H. at 228 (applying Rule 7 to RSA 606:10 appeals). Supreme Court Rule 7(1) provides that a notice of appeal shall be filed within thirty days of a "decision on the merits," except that "[a] timely filed post-trial motion shall stay the running of the appeal period."

In this case, though the State did not file its appeal within thirty days of the court's September 3, 2003 decision, the State argues that its September 17, 2003, post-trial motion for reconsideration was timely filed and should stay the running of the appeal period. Superior Court Rule 59-A provides that "[a] motion for reconsideration ... shall be filed within ten (10) days of the date of the *Clerk's* written notice of the order or decision." (Emphasis added.) In this case, the State received a copy of the "Notice of Amendment to Sentence" on September 8, 2003. The notice, however,

contained neither the signature of the clerk nor the date upon which the notice was issued. Instead, it merely contained the date of the order, September 3, 2003. The notice sent to the department of corrections, however, did contain the clerk's signature and the date of September 4, 2003.

The defendant argues that we should use the date of the order, September 3, 2003, or, in the alternative, September 4, 2003, as the date of the clerk's written notice of the order. Under such an analysis the State's motion for reconsideration would have been untimely, as September 17, 2003, is more than ten days after either September 3 or September 4. The defendant argues that the State's petition for writ of certiorari would then be untimely, as the appeal period would not have been stayed. The State, on the other hand, argues that the date that it received the notice, September 8, 2003, is the date from which it had ten days to file its motion for reconsideration, because the notice of the order that it received did not have a date. Using the State's analysis, its September 17, 2003 post-trial motion would have been timely, and would have stayed the running of the appeal period.

■ We need not determine which date to use for the purpose of calculating whether the State's motion for reconsideration was timely, because Supreme Court Rule 1 provides that we may suspend the requirements of our rules for good cause shown. Although it may have been *advisable* for the State to contact the court to clarify the date that it should use, and although under the 2003 version of Supreme Court Rule 21(6), then in effect, "[m]otions to extend time to file an appeal document and motions for late entry of an appeal document are not favored," given the State's short delay in filing its motion for reconsideration, which was caused by confusion created by an error of the court, we hold that the State has demonstrated good cause to suspend the time limits for the filing of its petition.

Next, the defendant argues that the State is procedurally barred from contesting his petition on two grounds. First, he contends that the trial court erred by allowing the State to contest his March 2, 2003 petition because the State did not file an objection until June 25, 2003, and because that written objection did not argue that the court's order violated RSA 651:20, I. The defendant also argues that the State failed to send a copy of its objection to him or his counsel.

■ In order for the defendant to prevail on these arguments, he must demonstrate that the trial court's rulings were clearly untenable or unreasonable to the *prejudice* of his case. *Rodriguez v. Webb*, 141 N.H. 177, 179 (1996). Here the defendant has not argued that he has suffered

any prejudice from the trial court's rulings. Therefore, the defendant has not demonstrated that the court committed reversible error.

■ Secondly, the defendant argues that the State should have appealed the trial court's June 2001 order, in which the court granted the defendant leave to refile his petition after May 15, 2003, or at least should have filed a motion for reconsideration from that order. The defendant relies upon language in the trial court's October 20, 2003 order in which it concluded that the State's procedural objections were untimely because the State neither appealed the June 2001 order nor filed a motion for reconsideration. We disagree with both the defendant and the trial court because the issue at hand was not ripe for judicial review until the defendant actually refiled his petition.

Though we have not adopted a formal test for ripeness, we have stated that we find persuasive the two-pronged analysis used by other jurisdictions that evaluates the fitness of the issue for judicial determination and the hardship to the parties if the court declines to consider the issue. *Appeal of State Employees' Assoc.*, 142 N.H. 874, 878 (1998). With respect to the first part of the analysis, fitness for judicial review, "[a] claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Standard Alaska Production Co. v. Schaible*, 874 F.2d 624, 627 (9th Cir. 1989).

> A case may lack ripeness, however, even when it involves a final ... action presenting a purely legal question. The second prong of the ripeness test requires that the contested action impose an impact on the parties "sufficiently direct and immediate as to render the issue appropriate for judicial review at this stage."

*Alascom, Inc. v. F.C.C.*, 727 F.2d 1212, 1217 (D.C. Cir. 1984) (quoting *Abbott Laboratories v. Gardener*, 387 U.S. 136, 152 (1967)).

Even assuming the issue before us meets the first part of the analysis, it fails to meet the second part of the analysis because the State faced no immediate hardship at the time the court issued its June 2001 order. At that time, the impact of the court's grant of prospective relief was merely speculative, as it was uncertain whether the defendant would refile his petition and, if he did, what action the court would take. The State suffered no hardship until the defendant refiled his petition and the court accepted it. As such, the State appropriately waited until the defendant refiled his petition to file its objection and later appeal when the court granted him relief.

Turning to the merits, we now consider the State's argument that the trial court exceeded its statutory authority under RSA 651:20, I. The defendant argues that the trial court properly exercised its broad discretion to suspend his sentence.

In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. In interpreting a statute, we first look to the language of the statute itself and, if possible, construe that language according to its plain and ordinary meaning. *Saviano v. Director, N.H. Div. of Motor Vehicles*, 151 N.H. 315, 318 (2004). We review the trial court's interpretation of a statute *de novo*. *Id.* at 318-19.

The trial court stated that it could accept the defendant's petition to suspend sentence prior to the expiration of the three-year waiting period because, when the court denied the defendant's first petition to suspend sentence, the court did so with the qualification that he could bring a new petition after May 15, 2003. Thus, the court concluded that it "in effect extended this time for consideration of the motion ruled on in June, 2001."

Sentencing is not about one decision made at a single time and place, but about a process that involves a number of interrelated decisions that may span several years in a given case and involve a number of different decision makers. *State v. Kierstead*, 141 N.H. 803, 804 (1997). The legislature has vested in the trial court the power to adapt sentencing to best meet the constitutional objectives of punishment, rehabilitation and deterrence—within these parameters, the judge has broad discretion to assign different sentences, suspend sentence, or grant probation. *Id.* Nonetheless, the legislature may circumscribe the court's power to suspend to a greater or lesser degree, provided that the sentencing process as a whole complies with the requirements of due process and with other constitutional constraints. *State v. Callaghan*, 125 N.H. 449, 451-52 (1984).

RSA 651:20 has been amended many times, with four versions being relevant to the issue in this case. The current version of RSA 651:20 is plain and easy to interpret; this is even more evident when we contrast each successive version of RSA 651:20 with its predecessors. The earliest version of RSA 651:20 provided, "Notwithstanding any other provision of law, the sentence to imprisonment of any person may be suspended, *at the time of sentence or at any time while any part remains unserved ....*" RSA 651:20 (Supp. 1972) (emphasis added). Under this version, the court had the power to suspend the defendant's sentence and could exercise that power at *any* time.

The second version of RSA 651:20 provided, "Notwithstanding any other provision of law, the sentence to imprisonment of any person may be

suspended, *at the time of sentence or no later than 180 days after imposition of the sentence,* unless otherwise ordered by the court *at the time of sentencing* ... ." RSA 651:20 (Supp. 1979) (emphasis added). As in the first version, the trial court continued to possess the power to suspend a sentence; however, in the second version the legislature limited the time during which the court may exercise that power. Under the second version, unless the court ordered otherwise at the time of sentencing, it had to exercise its power either at the time of sentencing or within 180 days after the imposition of the sentence.

The third version of RSA 651:20 provided:

> Notwithstanding any other provisions of law, the sentence to imprisonment of any person may be suspended, at the time of sentence unless otherwise ordered by the court, or at any time while any part of the sentence remains unserved, but a petition to suspend sentence may not be brought less than 2 years after commencement of said sentence nor more frequently than every 2 years thereafter.

RSA 651:20 (Supp. 1992). There are two important changes evident in the third version. First, the language regarding the time during which the court could exercise its power reverted back to the first version. Thus, a court could once again exercise its power at any time while a portion of the defendant's sentence remained unserved. Second, and different from the previous two versions of the statute, the third version restricted the times at which a defendant could petition the court for suspension by allowing a petition only once every two years.

Finally, the present version of RSA 651:20 provides, in pertinent part:

> Notwithstanding any other provision of law, except as provided in subparagraphs (a), (b), and (c), the sentence to imprisonment of any person may be suspended by the sentencing court at the time of imposition of the sentence or at any time thereafter *in response* to a petition to suspend sentence which is timely brought in accordance with the limitations set forth below in subparagraphs (a), (b), and (c).
>
> (a) Any person sentenced to state prison shall not bring a petition to suspend sentence until such person has served at least 4 years or 2/3 of his minimum sentence, whichever is greater, and *not more frequently than every 3 years thereafter.*
> . . . .
> (d) Petitions filed which do not meet the criteria in (a), (b), or (c) above *shall be dismissed without a hearing.*

RSA 651:20, I (emphasis added).

As in the third version of RSA 651:20, the court continues to have the power to suspend a sentence; however, the legislature has limited the time during which the court may exercise that power by allowing a court to suspend a defendant's sentence only at the time of the imposition of the sentence or in response to a petition that has been properly filed. Therefore, unlike the first and third versions of RSA 651:20, which allowed a court to exercise its power at any time, under the present version of the statute, unless the court acts to suspend a sentence at the time of its imposition, the court may not exercise its power to suspend a sentence unless that power is triggered by a properly filed petition.

The present version of the statute also further restricts the times at which a defendant can petition the court for suspension by prohibiting him from filing a petition until he has served either four years or two-thirds of his sentence, whichever is greater, and not more frequently than every three years thereafter, as compared to the two-year limit that was established in the third version of RSA 651:20.

■ In the present case, the court acted outside of its authority by exercising its power in response to an impermissibly filed petition. The statute mandates, as expressed in RSA 651:20, I(a), (d), that persons *shall not* bring a petition to suspend sentence more frequently than every three years after their first petition, and that persons who do so *shall* have their petition dismissed without a hearing. The legislature's use of the word "shall" indicates that the three-year waiting period is a mandatory requirement. *Carter v. Lachance*, 146 N.H. 11, 13 (2001). Thus, the trial court had no discretion to grant the defendant leave to refile his petition less than three years after the previous petition. Therefore, we hold that the court erred as a matter of law when it failed to dismiss the defendant's petition.

■ This is not to say, however, that a court's power to suspend a sentence has necessarily been diminished by the current version of RSA 651:20, as opposed to merely having been channeled. A court that is considering suspending a defendant's sentence, which does not believe that the defendant deserves an unconditional sentence suspension, but which believes that waiting three years for the defendant to refile a petition would be unjust, may still possess procedurally correct options to accomplish its goal. For example, a court might issue an order in which it acts to suspend a defendant's sentence conditioned upon the occurrence of future events, such as the defendant demonstrating good behavior and completing treatment and/or education programs.

Finally, the defendant argues that RSA 651:20, I(a) is ambiguous and cannot be interpreted to bar his petition. He argues that the word "sentence" is not clearly defined, and thus one cannot tell whether it refers to each individual sentence or the cumulative sentence.

The defendant contends that "sentence" should refer to the cumulative sentence rather than each individual sentence. His cumulative sentence in this case was eleven to twenty-two years. Two-thirds of the minimum cumulative sentence is seven and one-third years. It appears that the defendant argues that he could have brought a petition after July 10, 2003, because at that time he would have served seven and one-third years. We need not evaluate this argument for two reasons. First, the defendant filed his petition to suspend sentence on March 26, 2003, and, thus, even under the defendant's interpretation, that filing would have been premature. Second, the defendant overlooks the fact that he had already filed a petition to suspend sentence after he had served five years of his sentence for attempted first-degree assault. Thus, the defendant established the time frame by assuming that "sentence" referred to each individual sentence when he filed his initial petition. Therefore, the defendant could not refile a petition until three years after his initial petition.

Although the defendant raises several other arguments on appeal, we find that these arguments are without merit and warrant no further discussion. *Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

*Reversed.*

DUGGAN and GALWAY, JJ., concurred; NADEAU, J., dissented.

NADEAU, J., dissenting. I agree with the trial judge that the State's procedural objections should be rejected as untimely because the State neither appealed the court's June 2001 order nor filed a motion for its reconsideration.

The majority holds that under RSA 651:20, the trial court "had no discretion to grant the defendant leave to refile his petition less than three years after the previous petition." If they are correct, then the judge erred when he exercised that discretion in June 2001. Yet the majority concludes the judge did not err until he failed to dismiss the petition the defendant filed pursuant to the court order. The logic of that conclusion escapes me. What puzzles me is the concept that a judge does not err by issuing an order contrary to an unchallenged statute but does err by refusing to dismiss a petition allowed by an existing court order.

RSA 651:20 focuses upon two separate mandates. The first, against filing petitions more often than every three years, is imposed upon the defendant. The second, against granting relief from the filing restrictions,

is imposed upon the court. The State failed to object to the court's order granting relief, and then attempted to raise that issue two years later by objecting to the petition filed by the defendant. In fact, the State's objection was not received by the court until three months after the defendant filed his petition in conformance with the court order—an order to which no objection was made and from which no appeal was taken. It was not until the hearing on July 23, 2003, that the State even argued that the court did not have authority under RSA 651:20 to hear the defendant's petition.

The reason for requiring timely objection to court orders is to allow the trial judge the opportunity to correct a claimed mistake, or transfer the issue to the supreme court, or consider alternatives. *See, e.g. Transmedia Restaurant Co. v. Deveraux*, 149 N.H. 454, 459 (2003). The majority takes pains to point out that the judge had other options to accomplish the result he wanted without granting relief from the statutory time limit. Yet by failing to object timely, the State not only deprived the judge of the opportunity to consider other options, but also prevented the defendant from requesting other alternatives. "For counsel, conscious of error, to be permitted to sit by without making objection until there is less probability the wrong can be cured, would be to turn a rule of justice and fairness into a mere trap." *Id.* To me, the State's conduct seems not only unfair under the facts of this case but contrary to the rule requiring timely objection.

In addition, I do not concede that the majority is correct when it says, as dicta, that "the legislature may circumscribe the court's power to suspend . . . ." Thirty years ago, Justice Grimes expressed the view that any statute infringing upon a court's power to suspend a defendant's sentence would be unconstitutional as a violation of the separation of powers because the ability to suspend a sentence is part of the judiciary's inherent authority. *State v. Dean*, 115 N.H. 520, 525 (1975) (Grimes, J., dissenting in part and concurring in part.) He cautioned the court to be mindful that to preserve the separation of powers, the judicial branch of government "must resist all encroachments upon its power whenever the issue is presented to it." *Id.*

Although the issue of whether RSA 651:20 violates the separation of powers is not presented to us or resolved today, in light of the majority's analysis I feel constrained to evoke the sage advice of Justice Grimes, once again.

For these reasons, then, respectfully I dissent.