Strafford
No. 2004-831

THE STATE OF NEW HAMPSHIRE

v.

PHILIP S. HORNER

Argued: September 29, 2005
Opinion Issued: March 15, 2006

*Kelly A. Ayotte*, attorney general (*Katherine Cooper*, assistant attorney general, on the brief and orally), for the State.

*Michael J. Sheehan*, of Concord, by brief and orally, for the defendant.

DALIANIS, J. The defendant, Philip Horner, appeals an order of the Superior Court (*Nadeau*, J.) dismissing without a hearing his motion to suspend a portion of his sentence. We affirm.

The record reflects the following uncontested facts. In April 2000, the defendant was convicted by a jury on five counts of sexual assault pursuant to RSA 632-A:3, III (Supp. 2005). On each count, the trial court sentenced the defendant to three-and-one-half to seven years in the State Prison. All five sentences were made to run consecutively, but the fourth and fifth sentences were suspended.

On the third sentence, the trial court recommended that the defendant participate in the sexual offender program, adding, "2 ½ years of the minimum may be suspended upon successful completion of sexual offender [program]." At the sentencing hearing, the trial court explained:

> And, Mr. Horner, as an additional incentive, I have already allowed you to petition for sentence suspension upon completion of the sexual offender program. The law also permits you to petition this Court after serving four years of your minimum, and demonstrate to this Court whether any portion of your minimum sentence may be suspended. And I want—though that is part of the law, I want to make it clear on the record that I will at least give you a hearing at that time if you so request.

The defendant served the minimum three-and-one-half years on his first sentence and was paroled to his second sentence in October 2003.

Approximately four years after sentencing, on September 29, 2004, the defendant filed a Motion to Suspend Time for Successful Completion of Sexual Offender Program. The State objected, arguing that the defendant was not entitled to the relief requested in light of RSA 651:20 (Supp. 2005), which provides in pertinent part:

> I. Notwithstanding any other provision of law, except as provided in subparagraphs (a), (b), and (c), the sentence to imprisonment of any person may be suspended by the sentencing court at the time of imposition of the sentence or at any time thereafter in response to a petition to suspend sentence which is timely brought in accordance with the limitations set forth below in subparagraphs (a), (b), and (c).
>
> > (a) Any person sentenced to state prison shall not bring a petition to suspend sentence until such person has served at least 4 years or 2/3 of his minimum sentence, whichever is greater, and not more frequently than every 3 years thereafter.
> >
> > . . . .
> >
> > (d) Petitions filed which do not meet the criteria in (a), (b), or (c) above shall be dismissed without a hearing.

The State argued that the defendant, having received a sentence of less than four years, was not entitled to sentence suspension, despite the language used by the sentencing court. The trial court, noting that it "[did] not have the statutory authority to suspend the sentence as it originally suggested it could," denied the defendant's motion.

The defendant raises five issues on appeal. First, he argues that the trial court conditionally suspended his third sentence and retained jurisdiction; thus, after the defendant had served four years, the trial court was required to hear his subsequent motion to suspend his sentence. Second, he argues that his consecutive sentences should be considered in the aggregate in applying the time limits in RSA 651:20, I(a). Third, he argues that the trial court violated the doctrine against judicial *ex post facto* decisions by reinterpreting RSA 651:20 to deny him a hearing, and thus violated due process. Fourth, he argues that the State is estopped from challenging the legality of his sentence because it did not object at the time of sentencing. Fifth, he argues that even if the original sentence was illegal, he is entitled to have it enforced by virtue of his detrimental reliance on the trial court's comments at sentencing. We address each argument in turn.

The defendant's first and second arguments challenge the trial court's interpretation of RSA 651:20. In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *Petition of State of N.H. (State v. Fischer)*, 152 N.H. 205, 211 (2005). In interpreting a statute, we first look to the language of the statute itself and, if possible, construe that language according to its plain and ordinary meaning. *Id.* We review a trial court's interpretation of a statute *de novo. Saviano v. Director, N.H. Div. of Motor Vehicles*, 151 N.H. 315, 318-19 (2004).

The defendant first argues that the trial court conditionally suspended his third sentence at the time of sentencing, and thus was required to hear his subsequent motion to suspend that sentence irrespective of the time limitations provided in RSA 651:20, I(a). The defendant relies in part upon the language in RSA 651:20, I, that authorizes the trial court to suspend a sentence "at the time of imposition of the sentence." The defendant argues that, in this case, at the time of imposition of the sentence, the trial court conditionally suspended two-and-one-half years of his third sentence upon successful completion of the sexual offender program. Accordingly, he argues that the trial court retained jurisdiction and the time limitations in RSA 651:20, I(a) do not apply.

▮ The time limitations in RSA 651:20, I(a) are mandatory and cannot be waived by the trial court. *See Fischer*, 152 N.H. at 213. We have recognized that, despite the time limitations in RSA 651:20, I(a):

> A court that is considering suspending a defendant's sentence, which does not believe that the defendant deserves an unconditional sentence suspension, but which believes that waiting [the full time period required by RSA 651:20, I(a)] for the defendant to [file or] refile a petition would be unjust, may still possess procedurally correct options to accomplish its goal. For example, a court might issue an order in which it acts to suspend a defendant's sentence conditioned upon the occurrence of future events, such as the defendant demonstrating good behavior and completing treatment and/or education programs.

*Id.* However, the trial court here did not suspend the defendant's sentence conditioned upon the occurrence of a future event. Rather, the court at most created the opportunity for the defendant to return to court, prove that he had successfully completed the sexual offender program, and argue that the court should suspend two-and-one-half years from his minimum sentence. This opportunity to seek suspension of the sentence *after* its imposition is subject to the mandatory time limitations in RSA 651:20, I(a),

which cannot be waived by the trial court at the time of the imposition of the sentence. *See id.* We thus reject the defendant's first argument.

The defendant next argues that where, as here, a defendant is sentenced to consecutive sentences, the "minimum sentence" under RSA 651:20, I(a) should be calculated by aggregating the minimum sentences for each consecutive sentence. He contends that his minimum sentence is, accordingly, three times three-and-one-half years, or ten-and-one-half years. Therefore, he argues that RSA 651:20, I(a) authorizes him to petition the court for a suspended sentence after he has served two-thirds of ten and one-half years, or seven years.

The State disputes the defendant's interpretation of RSA 651:20, I(a), arguing that each minimum sentence must be considered separately, and that, accordingly, the defendant must serve at least four years or two-thirds of the minimum of each of his minimum sentences, whichever is greater, before he can petition for suspension of that sentence. We agree.

■ Reviewing RSA chapter 651 as a whole, we are confident that the word "sentence" plainly and unambiguously denotes the punishment prescribed by a court in relation to a conviction on a single offense. *See* RSA 651:1, I (1996) ("The provisions of this chapter govern the sentencing *for every offense* ....") (emphasis added)); *see also* RSA 651:15 (1996) ("Whenever *the* sentence for *an* offense is to be imprisonment for a maximum of more than one year, the sentence shall be served in the state prison." (emphasis added)). We conclude, therefore, that RSA 651:20, I(a) permits an inmate serving multiple, consecutive sentences to bring a petition to suspend an individual sentence after serving at least four years or two-thirds of the minimum term of that sentence, whichever is greater.

In the instant case, two-thirds of the minimum of each individual sentence is approximately two years and five months. Accordingly, under RSA 651:20, I(a), the defendant must serve at least four years of a single sentence before becoming eligible to suspend the remainder of that sentence.

The defendant asserts that the State's interpretation of RSA 651:20, I(a) unfairly prejudices inmates such as himself. To illustrate this alleged prejudice, he hypothesizes the situations of two prisoners, one serving a single fourteen to twenty-eight year sentence, the other serving four consecutive three-and-one-half to seven year sentences. The defendant correctly points out that, in the case of each prisoner, there is "no meaningful difference in the overall length of the sentences imposed." He further observes that the prisoner with the single fourteen to twenty-eight year sentence may, pursuant to RSA 651:20, I(a) seek to suspend the sentence twice before serving the minimum term, while the prisoner

serving multiple sentences "may never seek suspension." Thus, the defendant suggests, the State's interpretation of RSA 651:20 will bring about the inequitable treatment of two similarly situated prisoners. We find this hypothesis unpersuasive.

Though there is "no meaningful difference in the overall length" of the sentences imposed upon the defendant's hypothetical prisoners, it cannot be said that such prisoners are similarly situated. The first prisoner is serving only one sentence, whereas the second prisoner is serving four consecutive sentences for four separate convictions. Interpreting RSA 651:20, I(a) to permit the second prisoner to seek suspension after serving two-thirds of the aggregate minimum of his four sentences would, potentially, effect a *de facto* pardon from a portion of the third sentence and the entirety of the fourth sentence. We do not believe that the legislature, which amended RSA 651:20, I(a) in 1994 with the primary intent of "reduc[ing] trauma to crime victims," N.H.H.R. JOUR. 461 (1994), intended such a generous result.

The defendant, moreover, mischaracterizes the effect of the State's interpretation of RSA 651:20, I(a) when he asserts that a prisoner serving multiple, consecutive three-and-one-half to seven year sentences "may never seek suspension." This is true only if such a prisoner is fortunate enough to be granted parole upon serving the minimum term of each sentence. If the prisoner is not granted parole after serving the three-and-one-half year minimum of a single sentence, he may, pursuant to RSA 651:20, I(a), seek to suspend that sentence a mere six months later.

RSA 651:20, I(a) permits Class A felons to petition for sentence suspension while prohibiting some Class B felons serving shorter sentences for less severe offenses from ever doing the same. We recognize that, in yielding such a result, RSA 651:20, I(a) may be seen to work an unfair result on prisoners such as the defendant in the present case. We, however, regard this as an issue for the legislature.

The defendant's third argument is that the trial court's reinterpretation of RSA 651:20 violated the doctrine against judicial *ex post facto* decisions, and thus violated State and federal constitutional due process protections. We first address the defendant's claim under the State Constitution and cite federal opinions for guidance only. *State v. Ball*, 124 N.H. 226, 231, 233 (1983).

■ The doctrine against judicial *ex post facto* decisions prohibits the deprivation of the due process right to fair warning, which can result from "an unforeseeable and retroactive judicial expansion of statutory language that appears narrow and precise on its face." *Rogers v. Tennessee*, 532 U.S. 451, 457 (2001); *see Bouie v. City of Columbia*, 378 U.S. 347, 356 (1964)

(state court application of criminal trespass statute to sit-in demonstrators was unconstitutional because it was "clearly at variance with the statutory language [and had] not the slightest support in prior [state] decisions"). The defendant alleges that sentencing courts in New Hampshire engage in a widespread practice of allowing motions to suspend even when technically untimely under RSA 651:20, and thus the doctrine against judicial *ex post facto* decisions prohibits the trial court from denying him a hearing after only four years. However, even if we accept that allegation as true, that practice does not exist as part of the Criminal Code and that practice was not the subject of appellate review until our opinion in *Fischer*, 152 N.H. at 213, which was issued after the trial court rendered its most recent sentencing decision in this case. Given that this purported practice directly contravenes the mandatory language of RSA 651:20, it was not unforeseeable that the trial court here would reverse its earlier interpretation of the statute. *Cf. Rogers*, 532 U.S. at 462-64 (state court's abolition of a common law defense to murder and refusal to apply it in the case at hand was not unconstitutional, as the defense did not exist as part of the statutory criminal code and had been abolished in other jurisdictions). Thus, the trial court's reinterpretation was not unconstitutional and did not violate the doctrine against judicial *ex post facto* decisions.

The Federal Constitution offers the defendant no greater protection than does the State Constitution under these circumstances. *See id.* Accordingly, we reach the same result under the Federal Constitution as we do under the State Constitution.

The defendant next argues that "[t]he state is estopped from challenging the legality of the sentence to which it did not object at the time of sentencing." However, the defendant cites no authority for this argument, and so we decline to address it further, *see Franklin*, 151 N.H. at 509, and note only that we rejected a similar argument made by the defendant in *Fischer*, 152 N.H. at 210.

Finally, the defendant argues that he is "entitled to the benefit of the contract he entered with the court by virtue of his detrimental reliance on the court's promises of suspended time." He does not, however, provide any authority supporting his theory that a contract was formed between him and the court at the time of sentencing. He asserts only that he spent five years expecting a "realistic release date" in 2008, based upon the incentive proposed by the trial court at the 2000 hearing. The defendant cites *Breest v. Helgemoe*, 579 F.2d 95, 101 (1st Cir. 1978), where the United States Court of Appeals for the First Circuit suggested, in dicta, that "[a]fter a substantial period of time, it might be fundamentally unfair, and thus violative of due process for a court to alter even an illegal sentence in

a way which frustrates a prisoner's expectations by postponing his parole eligibility or release date far beyond that originally set." *Id.* The *Breest* court recognized, however, that a trial court is not only permitted to alter a statutorily invalid sentence in a way that increases its severity, it is required to do so "when the statute so provides." *Id.* at 99.

■ Though the legislature has vested in the trial court the power to adapt sentencing, it may also circumscribe the court's power to suspend, provided that the sentencing process as a whole complies with the requirements of due process. *Fischer*, 152 N.H. at 211. We have held that it is error for a trial court to act outside of the authority granted to it by RSA 651:20, I(a). *See id.* at 213. As we note above, the mandatory time limitations of RSA 651:20, I(a) cannot be waived by the trial court at the time of the imposition of the sentence. *See id.* In the instant case, the trial court acted outside of its statutory grant of authority by proposing to make the defendant eligible for sentence suspension at a time that contravened the legislatively mandated time limitations of RSA 651:20, I(a). As such, we conclude that the trial court was not only permitted to amend its error, it was required to do so.

*Affirmed.*

BRODERICK, C.J., and GALWAY, J., concurred; DUGGAN, J., concurred specially.

DUGGAN, J., concurring specially. In my view, the legislature did not intend to deprive defendants such as Philip Horner of the opportunity for a sentence reduction. I therefore disagree with the majority's interpretation of RSA 651:20, I(a) (Supp. 2005), but concur with respect to the remaining issues.

The defendant argues that his "minimum sentence" under RSA 651:20, I(a) should be calculated by aggregating the minimum sentences for each of his consecutive sentences. However, the majority concludes that because the statute uses the word "sentence" in the singular, each minimum sentence must be considered separately. We construe Criminal Code provisions "according to the fair import of their terms and to promote justice." RSA 625:3 (1996); *accord State v. Grimes*, 152 N.H. 310, 312 (2005). Application of the majority's literal interpretation of the statute to these facts does not promote justice.

Under the majority's interpretation of the statute, this defendant can only petition the court after serving four years of any one of his three and one-half to seven year sentences. However, this defendant has already served the minimum of three and one-half years of his first sentence and was paroled to his second sentence in October 2003. He may be paroled to

his third sentence after serving the minimum of three and one-half years of the second sentence, and then released after serving the minimum of three and one-half years of his third sentence. He may thus serve a total of ten and one-half years in prison, but never have the opportunity to petition the court for a sentence suspension because he never served four years of any one of his consecutive sentences. At the same time, a defendant serving a sentence of ten and one-half to twenty-one years for a single offense is able to petition the court after serving two-thirds of his minimum sentence, or seven years. Under the majority's interpretation, similarly situated petitioners are treated differently. While the legislative purpose here may have been to curtail motions to reduce sentences, I do not perceive a legislative purpose to treat similarly situated petitioners differently.

"We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result." *Franklin v. Town of Newport*, 151 N.H. 508, 510 (2004). In *State v. Decker*, 127 N.H. 468, 470 (1985), the defendant argued at sentencing that he was entitled to credit for pretrial confinement on each of his three consecutive sentences, which was, in effect, triple credit. We pointed out that his argument would result in a significant disparity between his sentence and the actual length of the same sentence for a similarly situated defendant able to furnish bail. *Id.* "Such a disparity could have no conceivable penological justification." *Id.* Thus, we did "not presume that ... the legislature intended the absurd result that the defendant's argument entails." *Id.*

I thus conclude that, to calculate this defendant's minimum sentence for purposes of RSA 651:20, I(a), his minimum sentence should be the aggregate of the consecutive minimum sentences imposed. Accordingly, the trial court should be able to consider the defendant's petition after he has served two-thirds of ten and one-half years, or seven years. However, because the defendant has not yet served seven years, even under my interpretation of RSA 651:20, I(a), the trial court did not err in denying his petition for suspension of a portion of his sentence.